IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GUY CHEMICAL COMPANY, INC. ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION NO. 3:06-96 |
| ) | |
| ROMACO N.V., ROMACO INC. ) | JUDGE KIM R. GIBSON |
| and UNIPAC, ) | |
| Defendants. ) | |

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

Now before the Court are various motions, including Defendants' Motion to Set Preliminary Hearing under Rule 12(d) to Dismiss for Insufficiency of Service of Process and Lack of Jurisdiction (Document No. 26); Plaintiff's Motion for Leave to File Amended Complaint (Document No. 31); Defendants' Motion for Partial Summary Judgment as to Damages (Document No. 38); Plaintiff's Motion for Extension of Time to Complete Discovery (Document No. 42); Defendants' Motion to Strike Plaintiff's Response to Document No. 26 (Document No. 45); and Plaintiff's Motion for Sanctions (Document No. 49). The Court heard oral argument on all six motions on December 1, 2006, and, after briefly reciting the factual history of this litigation, will now address each issue individually.

### INTRODUCTION

The events leading to this litigation began when Plaintiff, a contract packager, negotiated with Defendant Romaco Inc. ("Romaco" or "Defendant") for the purchase of a machine used to fill metal tubes with viscous substances. Romaco assured Plaintiff that the Unipac U-120 Automatic Tube Filling Machine ("U-120") would satisfy all of the latter's production needs and that post-purchase service and support would be competent and attentive. Document No. 1, ¶¶ 8, 12-14. Seeking confirmation, Guy

1

Chemical requested that Romaco test the machine using the heaviest materials Plaintiff intended to run through the U-120. Romaco complied and reported successful test results in a May 30, 2002, letter guaranteeing the machine's performance. *Id.* at ¶¶ 17-19. Attached to the letter was a more detailed price quote containing various performance specifications. The quote also made reference to a document titled Romaco Group Standard, which listed addition terms. Guy Chemical claims that it did not receive a copy of the Group Standard at this time. Document No. 58, p. 5. After a minor modification to the quote, the President of Guy Chemical, Guy Berkebile, signed a purchase order for the U-120, to which he attached the May 30 price quote. The purchase order, as well as the appended price quote, both recited the performance specifications that Romaco guaranteed in its May 30 letter. Exh. N attached to Document No. 39. The machine was installed at Guy Chemical's facility in August 2002 at a total purchase price, including installation, of just over $100,000. Document No. 1, ¶¶ 25-26.

The Complaint alleges that Romaco knew at the time of delivery that the machine was defective. *Id.* at ¶ 28. The U-120 began malfunctioning shortly after delivery and attempts to fix the various problems continued through July 2004, when Romaco admitted the machine was defective and offered Guy Chemical various upgrades. *Id.* at ¶¶ 31-62. Plaintiff declined, as the offer required it to purchase a new tube-filling machine. *Id.* at ¶ 63. Meanwhile, problems with the U-120 persisted through 2005 and Guy Chemical continually made repairs at its own cost. *Id.* at ¶¶ 65-82. Finally, in November 2005, Plaintiff demanded that Romaco either fully repair the machine or purchase it back. When no adequate reply was forthcoming, Plaintiff filed this lawsuit on April 27, 2006. The Complaint states causes of action for violation of express warranty, violation of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and breach of contract. *Id.* at ¶¶ 90-150. Plaintiff premised jurisdiction on diversity of citizenship and named as defendants Romaco N.V., a

Netherlands Antilles corporation, Romaco Inc.,[1] a wholly owned subsidiary residing in New Jersey, and Unipac, another wholly owned subsidiary residing at the same New Jersey address. *Id.* at ¶¶ 2-4. Plaintiff believed that Romaco N.V. managed the Romaco family of companies. It based this assumption on its own research and the representations made by various individuals who claimed to work for one or the other companies. Document No. 31, ¶¶ 6-12.

## THE PENDING MOTIONS

### A. Plaintiff's Motion for Leave to Amend

#### 1. Leave to Amend

While conducting its Rule 30(b)(6) deposition of Romaco on September 20, 2006, Plaintiff apparently learned of a conspiracy to defraud Guy Chemical perpetrated by the original defendants and various other Romaco companies, including Romaco AG, Romaco S.p.a., and Romaco S.r.l. Document No. 31, ¶ 33. Guy Chemical also became aware that Robbins & Myers, an Ohio company, purchased Romaco N.V. in 2001. *Id.* at ¶¶ 10-12. Though Plaintiff has drawn some conclusions regarding the Romaco corporate structure, it contends that the picture remains murky at best and confounds any attempt to understand the relationships between the companies, their relationships to Robbins & Myers, and any restructuring that has recently occurred. *Id.* at ¶ 37. Guy Chemical thus seeks leave to amend its Complaint in the following ways. First, it would like to name as additional defendants Romaco AG, Romaco S.p.a., and Romaco S.r.l., as well as any successors-in-interest to these entities or the existing defendants. Document No. 31-3, ¶¶ 2-7. It is alleged that Romaco AG is a Swiss business; that Romaco S.r.l and Romaco S.p.a. are Italian firms; and that Unipac is a division or subsidiary of Romaco

---

[1] The Complaint originally named Romaco USA. Document 1. That was amended to Romaco Inc. by Order of Court on October 3, 2006. Document No. 28.

3

S.r.l. *Id.*

Secondly, Plaintiff seeks to add claims for fraud and conspiracy. *Id.* at ¶¶ 146-84. Guy Chemical claims it did not know that it had these causes of action until its September 2006 deposition of Romaco, where it first viewed particular documents and heard relevant testimony. Document No. 31, ¶ 34. "Until that time, Guy Chemical was unaware that it was the victim of fraud as well as a conspiracy." Document No. 32, p. 8. Thus, Guy Chemical asserts it did not delay or demonstrate bad faith in waiting until October 12 before seeking leave to amend. *Id.*

Under FED. R. CIV. P. 15(a), leave to amend is liberally granted "when justice so requires." "This standard encompasses a broad range of equitable factors, including a party's delay in seeking leave to amend and any prejudice to the opposing party. Only when these factors suggest that amendment would be 'unjust' should the court deny leave." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006). Although leave may be denied when amendment will change the essential theory of the case, *see Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990) (denying leave in part because the amended complaint included claims under RICO and other complicated statutes, posing a radical shift in the direction of an action to enforce an ordinance), leave to amend is proper where the opposing party "should have recognized that the new matter included in the amendment would be at issue." CHARLES WRIGHT ET AL., FEDERAL PRACTICE § 1487, p. 632 (1990). *See also Phoenix Techs. v. TRW, Inc.*, 834 F. Supp. 148 (E.D. Pa. 1993) (allowing amendment where the "proposed amended counterclaim [did] not vary significantly from the original counterclaim").

"[T]he need for additional discovery does not conclusively establish prejudice." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990). However, "factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Arthur*, 434 F.3d at 204 (citations omitted). Futility

4

is determined by the likelihood that the content of the amendment will survive a renewed motion to dismiss. *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988). Courts have also denied leave where "the moving party knew about the facts on which the proposed amendment was based but omitted the necessary allegations from the original pleading." WRIGHT ET AL., § 1488, p. 688. One court refused leave to add a claim for fraud to a breach of contract suit when the facts grounding the proposed amendment were already known:

> [Plaintiff's] claim of newly discovered evidence borders on bad faith. [She] has asserted that her motion for leave to amend is supported by newly discovered evidence. But the newly discovered evidence is simply a new spin on information that she clearly knew when she filed this lawsuit or shortly thereafter.

*Groth v. Orkin Exterminating Co.*, 909 F. Supp. 1143, 1149 (C.D. Ill. 1995).

Romaco's first argument against amendment cites three indicators that suggest Plaintiff knew the pertinent facts when it filed its initial pleading. First, the Complaint specifically alleges that "Defendants were aware of the defective condition of the U-120 prior to its shipment to Guy Chemical." Document No. 1, ¶ 28. Second, Guy Chemical's President testified that he began to suspect he was "being left out in the cold" in November 2005, well before the Complaint was filed. Document No. 48-2, p. 8. Finally, throughout the Complaint, Plaintiff jointly refers to Romaco N.V. and Romaco Inc., presumably indicating that Guy Chemical was aware of a possible conspiracy. Counsel for Romaco also argued at the Dec. 1 hearing that the extent of the U-120's alleged malfunctioning was so "spectacular" as to put a reasonable person on notice of a possible fraud and conspiracy. Document No. 68, p. 17.

While it is curious that Plaintiff did not initially state a claim for fraud despite its apparent belief in a factual basis for such a claim, Romaco's arguments do not convince the Court that justice requires

5

denying leave to amend. Guy Chemical avers that at the September 2006 deposition of Romaco it saw for the first time an email stating that despite major concerns about the U-120's performance during testing, Romaco "needed the sale." Document No. 68, p. 5. Such evidence is distinguishable from the contrived bad-faith that animated the court in *Groth*, wherein existing evidence was simply recast under a different theory.

Defendant's second argument against amendment asserts that to raise these claims now will unduly delay the litigation and prejudice all defendants. Romaco states that "due to corporate restructuring ... since April 2006, Romaco Group companies no longer have ready access to some of the employees whose testimony they would have used to refute Guy Chemical's claims." Document No. 48, p. 2. Furthermore, as discovery has ended, this litigation is in its advanced stages and amendment would unduly delay the proceedings. Document No. 48, pp. 9-11. Romaco also calls unreasonable the three-week delay between the September 20, 2006, deposition and the October 12, 2006, Motion for Leave to Amend and objects to the extra expense they will incur defending additional claims. *Id.* at 9-10,

The prejudice Romaco claims will result if leave is granted is too tenuous to outweigh the liberal standard that attends FED. R. CIV. P. 15. If the accrual of additional attorney fees constituted prejudice, amendment might never be allowed. Further, the timeline in this suit is more compressed than in others where amendment was allowed. *See, e.g., Hill v. Equitable Bank, N.A.*, 109 F.R.D. 109 (D. Del. 1985) (granting a motion to amend filed three years into the lawsuit and four months before the scheduled trial date, even though amendment would require that the opposing party would have to make another motion for summary judgment and conduct more discovery); *Butcher & Singer, Inc. v. Kellam*, 105 F.R.D. 450 (D. Del. 1984) (similar). Though amendment inquiries are necessarily fact-dependent, the

6

caselaw suggests that the circumstances in the case *sub judice* are not the sorts of delays that create prejudice. It is also relevant that in its Motion to Enlarge Discovery, Guy Chemical seeks only two additional months of discovery. Document No. 42, ¶ 15. While granting Plaintiff leave to file an amended complaint will clearly nullify some of the progress made in this litigation, it will also be consistent with the spirit of the Federal Rules and the demands of justice.

Finally, Romaco contends that the fraud and conspiracy charges are subject to a two-year statute of limitations and are thus time-barred, making amendment futile. Defendant first argues that the two-year statute of limitations set forth in 42 Pa. C.S.A. § 5524(7)[2] began running either in June 2002, when the U-120 was purchased, or August 2002, when the machine was installed at Guy Chemical's facility. Document No. 48, p. 5. Alternatively, Defendant argues that the extent of the U-120's malfunctioning was such that a reasonable person would have realized by April 26, 2004 that they were the victim of fraud and conspiracy, thus making any fraud or conspiracy claim time-barred as of April 26, 2006. *Id.*; Document No. 68, pp. 16-17.

While the two-year period ordinarily begins to run at the time the fraud is committed, "Pennsylvania law recognizes an exception to the statute of limitations which delays the running of the statute until the plaintiff knew, or through the exercise of reasonable diligence should have known, of the injury and its cause." *Beauty Time v. VU Skin Sys.*, 118 F.3d 140, 144 (3d Cir. 1997).

> The limitations period begins to run when the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress. Whether the statute has run on a claim is usually a question of law for the trial judge, but where the issue

---

[2] According to 42 PA. C.S.A. § 5524: "The following actions and proceedings must be commenced within two years . . . . [a]ny other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud. . . ." *See also Bougher v. Univ. of Pittsburgh*, 882 F.2d 74 (3d Cir. 1989) (applying § 5524 to a conspiracy claim); *Chatterjee v. Sch. Dist.*, 170 F. Supp. 2d 509 (E.D. Pa. 2001) (applying § 5524 to a fraud claim).

> involves a factual determination, the determination is for the jury. Specifically, the point at which the complaining party should reasonably be aware that he has suffered an injury is generally an issue of fact to be determined by the jury. Only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law.

*Melley v. Pioneer Bank, N.A.*, 834 A.2d 1191, 1201 (Pa. Super. Ct. 2003) (citations omitted).

Guy Chemical's president actually considered the possibility of fraud in November 2005. Document No. 48-2, p. 8. The level of factual dispute in this litigation, however, discourages any legal finding that a reasonable person acting with appropriate diligence would not have suspected fraud sooner. For instance, the machine's performance record, as detailed in Plaintiff's Complaint, suggests an extensive history of discrete and varied malfunctions that resists legal parsing. Document No. 1, ¶¶ 29-82. The parties also contest the causes of the U-120's malfunctions. Guy Chemical insists the problem begins with the defects inherent in the U-120 as purchased. Document No. 1, ¶¶ 28, 30, 42-43, 49, 62, 66, 72. For its part, Defendant avers that the malfunctions were caused by Plaintiff's misuse. Document No. 11, ¶¶ 31, 33. Romaco also denies that it admitted the machine was defective and that it inadequately met its customer service obligations. Document No. 11, ¶¶ 43-43, 62, 66, 72.

The evidentiary record before the Court is at this moment too anemic to support any conclusion concerning at what point the two-year limitations period began to run. As a result, the Court dismisses Defendant's argument that the level of the U-120's malfunction was such that Guy Chemical was constructively on notice of fraud and conspiracy by April 26, 2004; there are less cynical explanations for inoperative machinery. This uncertainty has the immediate effect of undermining Defendant's argument that amendment would be futile.

Allowing the addition of tort claims in this action, however, may violate Pennsylvania's gist-of-the-action doctrine. In essence:

8

> the doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*eToll, Inc. v. Elias/Savion Adver.*, 811 A.2d 10, 19 (Pa. Super. Ct. 2002) (citations omitted). Circumscribing this principle is the notion that some duties arise from private agreement, while others adhere more generally in society:

> a breach of contract may give rise to an actionable tort where the wrong ascribed to the defendant is the gist of the action, the contract being collateral. The important difference between contract and tort claims is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie from the breach of duties imposed by mutual consensus.

*Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572, 582 (Pa. Super. Ct. 2003) (citations omitted). *See also Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 103-04 (3d Cir. 2001).

There is no categorical exception in the gist-of-the-action doctrine for fraud claims. *eToll*, 811 A.2d at 19. Though some cases have concluded that claims for fraudulent inducement are necessarily collateral to contractual duties, this Court has dismissed such claims under the gist-of-the-action doctrine. *Compare Sch. Lane House Phila., LLC v. Rait P'ship, L.P.*, No. 04-3821, 2005 U.S. Dist. LEXIS 21563, **13-16 (E.D. Pa. Sep. 27, 2005) ("In Pennsylvania, fraud in the inducement of a contract is not covered by the doctrine because fraud to induce a person to enter into a contract is generally collateral to the terms of the actual terms of contract.") *with Sunquest Info. Sys. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 656 (W.D. Pa. 1999). The most that can be said of the caselaw in this area is that the gist-of-the-action doctrine will not always bar fraudulent-inducement claims. *Cf. Advanced Tubular Prods. v. Solar Atmospheres, Inc.*, 149 Fed. Appx. 81, 85 (3d Cir. 2005) ("Pennsylvania courts have recognized that the gist of the action doctrine may not cover fraud in the

9

inducement.").

Instead, the mandate of this doctrine as it has evolved in Pennsylvania is simply that courts must examine the relationship between simultaneously pleaded fraud and contract claims. Where the two appear interwoven, a plaintiff's remedy lies solely in contract. The particular theory of fraud—whether it lies in inducement or performance—is not dispositive. The test under Pennsylvania law remains as stated in *eToll*:

> [T]he the question [is] whether the fraud concerned the performance of contractual duties. If so, then the alleged fraud is generally held to be merely collateral to a contract claim for breach of those duties. If not, then the gist of the action would be the fraud, rather than any contractual relationship between the parties.

*eToll*, 811 A.2d at 19. Review of more recent caselaw belies no indication that Pennsylvania law has diverged from this Court's conclusion that the gist-of-the-action doctrine may in certain circumstances bar fraudulent-inducement claims. *Sunquest Info. Sys.*, 40 F. Supp. 2d at 656. *See, e.g., Advanced Tubular Prods. v. Solar Atmospheres, Inc.*, 149 Fed. Appx. 81, 85 (3d Cir. 2005) ("Pennsylvania courts have recognized that the gist of the action doctrine *may* not cover fraud in the inducement." (emphasis added)); *Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co.*, 256 F. Supp. 2d 329, 341 (E.D. Pa. 2003) ("Fraud in the inducement of a contract would *not necessarily* be covered by the 'gist of the action doctrine." (citing *eToll*) (emphasis added)); *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 719 (Pa. Super. Ct. 2005) (noting that the "gist-of-the-action doctrine would *not necessarily* bar a fraud claim stemming from the fraudulent inducement to enter into a contract" (emphasis added)).

Dispositive in the case *sub judice* is that the performance specifications that Romaco guaranteed during precontractual negotiations were later included in the price quotation and purchase order that comprised the Parties' contract. Exh. N attached to Document No. 39. Plaintiff's proposed fraud claim

10

is thus inextricably intertwined with Defendant's performance of the contract. While Romaco may have had a social duty not to deceive Guy Chemical into contracting, once the deception was incorporated into the contract, Plaintiff's remedies are to be found in the law of contracts. *See Owen J. Roberts Sch. Dist. v. HTE, Inc.*, No. 02-7830, 2003 U.S. Dist. LEXIS 2997, at **10-12 (E.D. Pa. Feb. 28, 2003) (applying the gist-of-the-action doctrine to a fraudulent-inducement claim based on "precontractual statements on topics that the parties ultimately addressed in the contract itself"); *Galdieri v. Monsanto Co.*, 245 F. Supp. 2d 636 (E.D. Pa. 2002) (same); *Werner Kammann Maschinenfabrik, GmbH v. Max Levy Autograph, Inc.*, No. 01-1083, 2002 U.S. Dist. LEXIS 1460, at *18-22 (E.D. Pa. Jan. 31, 2002) (same).

While it is probable that the gist-of-the-action doctrine makes Plaintiff's tort claims vulnerable to a Rule 12(b)(6) motion, some courts have shown concern that it would be unfairly premature to dismiss tort claims before a plaintiff is allowed the chance to investigate the true gist of the action through discovery. *See, e.g., Prof'l Sys. Corp. v. OPEX Postal Techs.*, No. 05-2689, 2006 U.S. Dist. LEXIS 9487, at **13-14 (E.D. Pa. March 8, 2006); *Interwave Tech. Inc. v. Rockwell Automation, Inc.*, No. 05-398, 2005 U.S. Dist. LEXIS 37980, at **40-41, 54-56 (E.D. Pa. Dec. 30, 2005). Furthermore, the reasoning of *Sunquest* applies only against those who agree to the terms of the contract, as integration clauses do not bind nonparties. *Sunquest*, 40 F. Supp. 2d at 656. The Romaco corporate structure has yet to emerge in this lawsuit with any clarity. The Court is therefore ill-prepared to decide with confidence exactly who is insulated from Guy Chemical's tort claims. Instead, the prudent course at this stage is to allow further discovery to illuminate which defendants were party to the contract, which were in privity with those party to the contract, and what the legal effect, if any, of such privity should be in a gist-of-the-action analysis. The Court will therefore permit Plaintiff to amend its

11

complaint to state both the fraudulent-inducement and the conspiracy claims against all defendants. In turn, defendants will be permitted to raise their gist-of-the-action defense at a time when the relationship between all Parties is more easily discerned.

### 2. Relation Back

The proposed tort claims that Plaintiff seeks to state in its amended complaint are also governed by a two-year statute of limitations. 42 PA. C.S. § 5524. As the Court has already discussed, however, the question of when this limitations period began to run is not one that can be answered as a matter of law. Thus, deciding whether Guy Chemical's tort claims will relate back to the filing date of its original complaint will not determine whether those claims are still viable. Furthermore, given that Plaintiff's arguments for relation back depend substantially on the interrelationships between the Romaco companies, the Court finds that additional discovery will greatly assist in any imputed or constructive notice analysis under FED. R. CIV. P. 15(c). *See In re Allbrand Appliance & Television Co.*, 875 F.2d 1021, 1025 (2d Cir. 1989) (describing the identity of interest theory of imputed notice as dependent on corporate structure and organization). Lastly, the result of any forthcoming motion to dismiss will help narrow the scope of the relation-back inquiry.

### B. Plaintiff's Motion to Extend Discovery

The Court finds unavailing Defendant's argument that any extension of discovery will be unfair. Document No. 68, p. 22. The filing of an amended complaint stating additional causes of action merits additional discovery, and the sixty days that Plaintiff has requested does not represent a prejudicial amount of time. Accordingly, Plaintiff's Motion to Extend Discovery Deadlines (Document No. 42) is granted and all Parties shall have an additional sixty days from the date of the Order accompanying this Opinion in which to conduct discovery.

## C. Defendants' Motions to Dismiss and to Strike

As the Court will allow Plaintiff leave to file their Amended Complaint, Defendants' Consolidated Motions to Set Preliminary Hearing Under Rule 12(d) and to Dismiss for Insufficiency of Service of Process and Lack of Jurisdiction Over the Person (Document No. 26) is denied without prejudice. Defendants are free to raise this issue again after the close of discovery.

Defendants' Motion to Strike as Untimely Filed Guy Chemical's Response to Document No. 26 (Document No. 45) is denied as moot.

## D. Defendants' Motion for Partial Summary Judgment

Romaco moves for partial summary judgment on the issue of contractual limitation of damages. Document No. 38. Summary judgment is appropriate where "there is no genuine issue as to any material fact." FED. R. CIV. P. 56. "An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (citation omitted). Material factual disputes are those "that might affect the outcome of the suit under governing law." *Id.* On a motion for summary judgment, the moving party must first "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). To defeat the motion, "an adverse party may not rest upon the mere allegations or denials of his pleading." *Id.* at 321 n.3. Instead, the nonmoving party must use evidence to "set forth specific facts showing that there is a genuine issue for trial." *Id.* "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216.

13

According to Defendant, damages in this case were explicitly limited through the incorporation by reference of a document known as the Romaco Group Standard ("RGS"). Section 16 of the RGS states—in bold, italicized print—that

> in the event the equipment purchased hereinunder fails to perform as warranted, or is defective as to materials and/or workmanship, and such failure of performance or defect is not cured, repaired or replaced by Romaco within fourteen business days. . .then buyer shall be entitled to damages equal to buyer's cost of curing, remedying or replacing the same, as the case may be. . . .

Document No. 39-2, p.75. Romaco interprets this language to preclude the recovery of consequential damages and limit Guy Chemical to its costs in curing, remedying, or replacing the machine. Document No. 39, p. 10. Because Section 16 is not unconscionable and because lost profits, lost opportunity damages, reputational damages, and the like are unavailable, Defendant argues that summary judgment limiting its liability is appropriate.[3] Guy Chemical claims that the clause is unenforceable, however, because the RGS was not validly incorporated, because the plain language of § 16 does not actually limit the potential damages, and because, assuming that it did, Defendants' bad faith and noncompliant conduct would legally bar them from enjoying the protection of such a limitation. Document No. 58, pp. 13-26.

The Court need not decide at this time whether the RGS was validly incorporated into the U-120 contract. Furthermore, examining the plain language of the clause, the Court need not make any other finding than to note that if § 16 was intended to limit possible damages, then it stands as an example of remarkably poor draftsmanship. Assuming that the RGS was incorporated by reference and that § 16 does expressly limit Plaintiff's recoverable damages, "bad faith conduct on the part of the seller can

---

[3] Clauses that limit consequential damages are valid under the Pennsylvania Commercial Code. 13 PA. C.S. § 2179(c) ("Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.").

14

prevent enforcement of an otherwise valid limitation of damages clause." *Werner Kammann Maschinenfabrik, GmbH v. Max Levy Autograph, Inc.*, No. 01-1083, 2002 U.S. Dist. LEXIS 1460, at *11 (E.D. Pa. Jan. 31, 2002) (citing cases).

In *Werner*, the plaintiff purchased a furnace based on defendant's express representation that the heating elements were enclosed. The actual furnace did not contain these elements, however, delaying plaintiff's performance in various other contracts. *Id.* at **2-3. Plaintiff therefore brought claims sounding both in contract and tort: breach of contract, breach of warranty, and fraudulent and negligent misrepresentation. Defendant's motion to dismiss the claims was based on both a limitation-of-damages clause and the gist-of-the-action doctrine. Surveying the majority position on this issue, the court predicted that the Pennsylvania Supreme Court would agree that a seller cannot enforce a limitations clause when its performance on the contract has been in bad faith. *Id.* at **11-15. To hold otherwise, the court found, would contravene the good faith requirement embedded in the Pennsylvania Commercial Code and frustrate the freedom of contracting parties to allocate risk. *Id.* at **14-15. Plaintiff's allegation of bad-faith conduct—the misrepresentation that the heating elements were included—was enough to defeat defendant's motion to dismiss. Significantly, it did not matter that the court went on to dismiss plaintiff's tort claims under the gist-of-the-action doctrine. Viable fraud claims were not essential to the legal principle espoused in *Werner*; misrepresentation could undermine any defense to plaintiff's contract claims that relied on the damage-limitations clause. *Id* at **18-21.

Guy Chemical has provided evidence that Romaco had concerns about the U-120's fitness prior to contracting with Plaintiff. An internal email dating from 2003 states that "[d]uring the trials of this product [there were] major concerns of the standard machine being able to handle it. Of course we needed the sale and we were over ruled [*sic*] and forced to accept the application by our old upper

15

management." Exh. F attached to Document No. 58. This document places considerable doubt on the supposed test results that prompted Plaintiff's contract with Romaco and suggests that the latter knew its product could not perform as advertised. Such action constitutes bad faith under Pennsylvania law. *Kaplan v. Cablevision of Pa., Inc.*, 671 A.2d 716, 722 (Pa. Super. Ct. 1996) ("[E]xamples of 'bad faith' conduct include: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." (citations omitted)). Regardless of whether Plaintiff's tort claims can withstand any future motion to dismiss, Defendant's bad-faith conduct prevents this Court from enforcing § 16 of the RGS and Defendant's Motion for Partial Summary Judgment as to Damages must be denied.

### E. Plaintiff's Motion for Sanctions

Plaintiff also moves for sanctions under Fed. R. Civ. P. 37 for the effective nonappearance of Defendant Romaco's Rule 30(b)(6) designee, Mark Pellegrino ("Pellegrino"). Plaintiff avers that, despite a detailed notice of deposition, Romaco selected a wholly inadequate spokesperson who could not answer any question regarding the technical or mechanical issues in this case. Guy Chemical points to twenty-seven instances in the deposition transcript where Pellegrino could not adequately respond to questions relating to the U-120, despite proper notice that such questions would be asked. Document No. 50, pp. 7-11. According to Plaintiff, "Mr. Pellegrino possessed little or no understanding, let alone knowledge, of the areas of inquiry set forth in the Notice of Deposition." *Id.* at 6. Because Pellegrino was designated by Robbins & Myers and counsel for Romaco, and because Pellegrino's "lack of preparation and knowledge was the equivalent of [Romaco's] failure to appear," Plaintiff also alleges that "Defendants as well as Defendants' counsel are deserving of sanctions" *Id.* at 1. Guy Chemical

thus asks that the Court order Romaco to designate a fully prepared and knowledgeable 30(b)(6) witness to appear in the offices of Guy Chemical's counsel, strike the errata sheet filed by Romaco after Pellegrino's review of his deposition transcript, and levy upon Romaco and Hull McGuire the costs and fees associated with the Rule 37 motion and taking the initial Rule 30(b)(6) deposition.

To the extent that Romaco responds to the substance of Plaintiff's Rule 37 motion, it claims that Pellegrino, as the most senior Romaco employee, possessed the broadest knowledge of the facts of this case, which defense counsel supplemented through hours of "poring over—and later producing—[Romaco's] entire file related to Guy Chemical." Document No. 53, p. 13. Defendant also claims that Plaintiff knew in August 2002 that Charles Rowe ("Rowe"), a Romaco employee, had "knowledge of the technical and mechanical functioning of the Unipac 120." *Id.* at 12. Romaco further contends that its particular circumstances—it has recently downsized from eighty employees to ten—mean that it "cannot totally disrupt its business by designating every current and/or former employee to serve as its collective spokespeople." *Id.* at 13.

FED. R. CIV. P. 30(b)(6) requires that a noticed organization "designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf. . . . The persons so designated shall testify as to matters known or reasonably available to the organization." "[T]he designated deponent has a duty of being knowledgeable on the subject matter identified as the area of inquiry. A corporation must prepare its selected deponent to adequately testify not only on matters known by the deponent, but also on subjects that the entity should reasonably know." *Coleman v. Blockbuster, Inc.*, 238 F.R.D. 167, 171 (E.D. Pa. 2006) (citations omitted). "[W]hen a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), producing an unprepared witness is tantamount to a failure to appear that is sanctionable under Rule 37(d)." *Black*

17

*Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000) (citation omitted).

It does not matter that Romaco "practically begged Guy Chemical's counsel to depose Rowe." Document No. 53, p. 12. It is Defendant's obligation to select the proper 30(b)(6) witness and make him available for deposition; Romaco cannot shift this burden to Plaintiff. *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 210 F.3d 1, 17 (1st Cir. 2000). Nor is it relevant that Romaco employs significantly fewer people than it once did: "The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416 (5th Cir. 2006) (citations omitted). On the other hand, "the rule may not require absolute perfection in preparation—it speaks after all of matters known or reasonably available to the organization." *Wilson v. Lakner*, 228 F.R.D. 524, 528 (D. Md. 2005). The question is whether the designee has shown anything less than a "conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by the party noticing the deposition and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed as to the relevant subject matters." *Brazos River Auth.*, 469 F.3d at 433 (citations omitted).

While a handful of unanswered questions in a twelve hour deposition does not appear unreasonable at first glance, Rule 30(b)(6) sets forth qualitative standards. The notice of deposition clearly forewarned Pellegrino of a category of questions that directly related to Romaco's affirmative defenses. His complete inability to "fully, completely, [and] unevasively" respond constitutes a violation of the discovery principles articulated in the federal rules. *Constellation NewEnergy, Inc. v. Powerweb, Inc.*, No. 02-2733, 2004 U.S. Dist. LEXIS 15865, at **9-18 (E.D. Pa. Aug. 10, 2004) (ordering sanctions against a party whose 30(b)(6) designee could not answer a specific category of questions listed in the notice of deposition). Rule 30 also expressly anticipates that more than one

18

person may be needed to satisfy an organizations (b)(6) responsibilities. To the extent that Pellegrino was unable to answer certain areas of inquiry noticed by Plaintiff, Romaco and its counsel should have designated additional personnel who could adequately respond.

Guy Chemical construes Defendant's failure to do so as bad faith; Defendant claims it accommodated both the circumstances of its client and the demands of Rule 30(b)(6) by designating a single individual with the broadest array of knowledge about Romaco and attempting in good faith to adequately prepare him. The Court cannot say that there was bad faith noncompliance here. *United States v. Mass. Indus. Fin. Agency*, 162 F.R.D. 410, 412 (D. Mass. 1995) (considering an organization's circumstances before finding that the inadequate preparation of its Rule 30(b)(6) designee was not bad faith). Though Pellegrino's failure to meaningfully appear justifies ordering a second Rule 30(b)(6) deposition at Romaco's expense, Defendant's conduct does not merit any more sanction than that. Specifically, the Court will not strike the errata sheet Pellegrino filed after his deposition or order Romaco to reimburse Plaintiff for costs it accrued deposing Pellegrino. Under Rule 37(d), however, Guy Chemical may recover the costs and fees associated with its motion.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court finds that it should grant Plaintiff leave to file an amended complaint. Defendants remain free to raise any defenses to the amended complaint via the appropriate motions. In accordance with that conclusion, the Court will reopen discovery and deny without prejudice Romaco's Motions to Dismiss and to Strike. Additionally, because Plaintiff has brought forward evidence of Romaco's bad-faith conduct, the Court will deny without prejudice Defendants' Motion for Partial Summary Judgment. Lastly, the Court will order Romaco to produce a supplemental Rule 30(b)(6) designee to address the areas of inquiry for which the

previous designee was inadequately prepared. An appropriate Order follows.

**AND NOW**, this 22nd day of January, 2007, **IT IS HEREBY ORDERED** as follows:

1) Defendants' Motion to Set Preliminary Hearing under Rule 12(d) to Dismiss for Insufficiency of Service of Process and Lack of Jurisdiction (Document No. 26) is **DENIED** without prejudice;

2) Plaintiff's Motion for Leave to File Amended Complaint (Document No. 31) is **GRANTED**. Plaintiff shall file an Amended Complaint **on or before January 31, 2007**;

3) Defendants' Motion for Partial Summary Judgment as to Damages (Document No. 38) is **DENIED** without prejudice;

4) Plaintiff's Motion for Extension of Time to Complete Discovery (Document No. 42) is **GRANTED**. The Parties may conduct additional discovery for sixty days from the date of the filing of Plaintiff's Amended Complaint;

5) Defendants' Motion to Strike Plaintiff's Response to Document No. 26 (Document No. 45) is **DENIED**;

6) Plaintiff's Motion for Sanctions (Document No. 49) is **GRANTED**. Plaintiff shall serve a notice of deposition upon Romaco limited to the areas set forth in its initial notice of deposition but not adequately addressed in the September 20, 2006 deposition of Mark Pellegrino. Following this second Rule 30(b)(6) deposition, Plaintiff shall submit to the Court the appropriate documentation verifying the costs and expenses—including attorney fees—associated with its Motion for Sanctions and with taking the second Rule 30(b)(6) deposition. Counsel for Defendants may file objections to that accounting within one week of its filing and will be responsible for reimbursing all costs, as the Court finds appropriate.

BY THE COURT:

KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE

Cc: **All counsel of record**