## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GUY CHEMICAL COMPANY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO. 3:2006-96 |
| v. | ) |
| | ) JUDGE GIBSON |
| ROMACO S.p.A. and any successors-in- | ) |
| interest, ROMACO S.r.l. and any | ) |
| successors-in-interest, UNIPAC, and any | ) |
| successors-in-interest, and ROMACO, Inc. | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM OPINION and ORDER

This matter comes before the Court on Defendant Romaco S.r.l.'s Motion to Dismiss

Defendants "Unipac" and "Romaco S.p.A." (Doc. No. 141), Defendants' Motion for Partial

Summary Judgment (Doc. No. 96), and Defendants' Motion for Lack of Jurisdiction Over the

Person (Doc. No. 88) for which a hearing was held on May 15, 2008 (Doc. Nos. 136, 137). For

the reasons stated herein, Defendant Romaco S.r.l.'s Motion to Dismiss Defendants "Unipac"

and Romaco S.p.A." is granted; Defendants' Motion for Partial Summary Judgment is granted in

part and denied in part; and Defendants' Motion for Lack of Jurisdiction Over the Person is

denied.

The Court has jurisdiction over the claims in this matter pursuant to 28 U.S.C. § 1332.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b)(2).

## I. FACTUAL HISTORY[1]

Guy Chemical Company is a Pennsylvania corporation with a principal place of business at 150 Dominion Drive, Somerset, Pennsylvania 15501. Plaintiff's Amended Proposed Findings of Fact and Conclusions of Law Regarding Defendants' Second Motion to Dismiss for Lack of Personal Jurisdiction, Doc. No. 144, ¶ 1, (hereinafter "Plaintiff's Findings"). Defendant Romaco, Inc. is a Delaware corporation with a place of business in New Jersey. Romaco, Inc. is the entity that sold the [Unipac 120] machine at issue to Guy Chemical. Plaintiff's Findings, ¶ 2. Defendant Romaco S.r.l. is incorporated and headquartered in Italy with a business address at Via Marzabotto 5, 40067, Fraz Rastignano (BO), Italy. *Id.* ¶ 4. Romaco S.r.l. is the latest corporate form of the company that manufactures Unipac machines. *Id.*

Defendant Romaco S.r.l. manufactures several product lines of packaging equipment, including the Unipac line and a tube-filling machine known as the Unipac 120. Defendant Romaco S.r.l.'s Proposed Findings of Facts and Conclusions of Law on Rule 12 (b)(2) Motion, Doc. No. 145, ¶ 4 (hereinafter "Defendant's Findings"). Until September 1, 2006, Romaco S.r.l. sold its products through affiliate corporations worldwide, including through Romaco, Inc. Romaco S.r.l. did not sell its products outside the Romaco family of companies. *Id.* ¶ 7. Defendant Romaco, Inc., in turn was the exclusive marketer and distributor of Unipac and other Romaco S.r.l. lines in the U.S. *Id.* ¶ 8. Both [Romaco, Inc. and Romaco S.r.l.] are wholly owned

---

[1]The following facts are based upon the Movant's Statement of Relevant Undisputed Material Facts (Doc. No. 97), Guy Chemical Company's Response to Defendants' Statement of Relevant Material Facts (Doc. No. 115), Plaintiff's Amended Proposed Findings of Fact and Conclusions of Law Regarding Defendants' Second Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 144), and Defendant Romaco S.r.l.'s Proposed Findings of Fact and Conclusions of Law on Rule 12(b)(2) Motion (Doc. No. 145). Any proposed facts not contained within the following recitation of facts were found by the Court to remain disputed in the record or to be immaterial.

subsidiaries of Robbins & Myers, Inc. ("R&M"), a U.S. company based in Dayton, Ohio. *Id.* ¶ 9. Charles Rowe, Romaco Inc's service technician, testified that Defendant Romaco, Inc. purchased products–always "stock" or "standard" machines–from Romaco S.r.l., and then customized and completed them. *Id.* ¶ 13. The Unipac 120 stock machine eventually sold to Guy Chemical was purchased by Romaco, Inc. from Romaco S.r.l.'s Unipac division in June 2001 for $92,320.48. *Id.* ¶ 14.

Guy Chemical, a Pennsylvania contract packager, first learned of Romaco, Inc. when representatives from both companies talked at the 2000 Pack Expo Trade Show held in Chicago. *Id.* ¶ 18. At the hearing, Mr. Guy Berkebile, the president of Guy Chemical, testified that an agent in the Romaco booth informed him that Unipac was an Italian manufacturer of squeeze tube filling machines and Romaco was the "marketing and service arm of Unipac" that provided "nationwide technical service throughout the United States." Plaintiff's Findings, ¶ 23. Mr. Berkebile testified that he specifically identified Guy Chemical as a Pennsylvania company, and the Romaco agent informed him it would not be a problem to service a Pennsylvania customer. *Id.* ¶ 23. Mr. Berkebile further testified that Mr. Bernie Conlon gave him similar assurances and explained that Pennsylvania was "in his service area." *Id.* The agent at Pack Expo and Mr. Conlon provided Mr. Berkebile with advertising literature about the Unipac 120 which he took back with him to Pennsylvania. The brochure itself identifies Unipac as a division of Romaco S.p.A. (now Romaco S.r.l.). Although Romaco, Inc. supplied Guy Chemical with the brochure, Romaco, Inc. is not identified on the advertisement. Plaintiff's Findings, ¶ 27. Romaco S.r.l.

3

supplied Romaco, Inc. with product descriptions and technical specifications for the Unipac 120 brochures that Romaco, Inc. used to market the products in the United States. *Id.* ¶ 28.

Mr. Berkebile was invited to visit Romaco, Inc.'s facilities in New Jersey to observe Unipac 120 machines in person. Appendix to Brief in Opposition of Motion, Doc. No. 118, Exhibit A, ¶ 18. In May 2002, Mr. Berkebile and Douglas Adamasky, the production manager at Guy Chemical, went to Romaco, Inc.'s facility in New Jersey. *Id.* ¶ 19. At the facilities, they were given a tour by Bernie Conlon and were welcomed by Charles Petralia part way through the tour; during the tour, Mr. Berkebile and Mr. Adamasky received a demonstration of a Unipac 120. *Id.* ¶ 20. This demonstration consisted of a "dry run" in which tubes without any materials were run on a Unipac 120. *Id.* ¶ 22. After this "dry run", Mr. Berkebile testified that he questioned the ability of a Unipac 120 to handle Guy Chemical's oxime silicone. *Id.* ¶ 23. In response to this inquiry, Mr. Petralia allegedly stated that the Unipac 120 would be able to handle Guy Chemical's oxime silicone at the reduced rate of 45 tubes per minute at best. *Id.* ¶ 25. This rate was unacceptable to Guy Chemical. *Id.* ¶ 26. Mr. Conlon then allegedly opined that Mr. Petralia was overly conservative on his estimates and suggested that the Unipac 120 would run Guy Chemical's oxime silicone at the rate of 60 tubes per minute. *Id.* ¶ 27. Mr. Conlon further suggested that Romaco, Inc. actually test Guy Chemical's oxime silicone on a Unipac 120 to determine the rate at which the Unipac 120 could fill tubes. *Id.* ¶ 28.

In May 2002, Guy Chemical began negotiations with Romaco, Inc. for the purchase of the Unipac 120. Defendant's Findings, ¶ 19. In a purchase order-letter dated May 30, 2002, Romaco, Inc. wrote to Guy Chemical informing it, among other things, that a trial run with a

4

"1209/A RTV Series Adhesive Sealant" was complete. *Id.* ¶ 20. The letter specifically guaranteed "60 tubes-per-minute" for certain silicone products and 100 tubes-per-minute (stock machine-based) for other tubes. It included a one-year Warranty (Guarantee) from the delivery of the machine, which would not apply if the buyer misused the machine. *Id.*

In late August 2002, Romaco, Inc. technician, Charles Rowe, installed the Unipac 120 at Guy Chemical's facilities in Berlin, Pennsylvania. *Id.* ¶ 22. During installation, Mr. Rowe trained Guy Chemical personnel on change-over procedures and the touch screen. The machine ran overnight and produced approximately 10,000 tubes. During the overnight run, a pump was ruined and Mr. Rowe remade the pump. *Id.* ¶ 20. Plaintiff alleges that since its installation, the Unipac 120 machine has experienced persistent problems. Plaintiff's Amended Complaint, Doc. No. 75, ¶¶ 84-97. These problems include the machine damaging the tubes that it was filling; issues with the fan motor, cam, and bearing; malfunctioning of the nozzle stem; leakage from the rotary valve and pump body; routine malfunctioning of the drive motor; failure of the tubes to be filled properly; wearing of the rotary valve cock lever; breaking of the pump body flange as well as the mounting clamps to the pump body; fluctuation in the content weight among the same tubes filled; routine malfunction of the tube orientation station; cracking of nozzle tips; breakage in the bearings on the main shaft of the volume adjustment; and the inability of the nozzle to maintain height and volume adjustments. *Id.*

On January 22-23, 2003, Alessandro Zannini, general manager of Unipac (now Romaco S.r.l.), visited Guy Chemical's facilities. Defendant's Findings, ¶ 27. Mr. Zannini toured Guy Chemical's facilities, and discussed and viewed the Unipac 120. *Id.* ¶ 28. Mr Berkebile testified

5

that they discussed Guy Chemical's problems with the machine. They further discussed Guy Chemical's concerns that Romaco, Inc. did not have replacement parts on hand in the United States as it had represented to Guy Chemical and the fact that Guy Chemical was always waiting on parts to be shipped from Italy to service the machine. Mr. Berkebile further testified that Mr. Zannini discussed Guy Chemical's potential future needs for additional machines, and told Mr. Berkebile to contact him directly in Italy if he felt he was not receiving the service he needed from the United States distributor. Mr. Zannini also took Mr. Berkebile to dinner. Plaintiff's Findings, ¶¶ 18-19.

Mr. Rowe testified that Unipac manufacturer representatives "usually" visit the customer on site "to see how everything is working out, you know checking out the machine, making sure all their needs are met by us as Romaco." *Id.* ¶ 19. Mr. Rowe further testified that when Mr. Zannini visited Guy Chemical, he visited several other customers in the "Pennsylvania area" as well as New York and New Jersey. *Id.* Additionally, he stated that Romaco S.r.l. makes its personnel available to Romaco, Inc. through telephone calls and actual visits to either Romaco, Inc.'s facility or customer locations, to assist on technical problems. *Id.* ¶ 33. Relative to Guy Chemical, Charles Rowe regularly communicated with Ugo Tanfani, and engineer at Romaco S.r.l. to service the machine. From at least January 22, 2003, through April 22, 2003, Mr. Rowe and Mr. Tanfani exchanged approximately 15 emails concerning the problems Guy Chemical had with the machine. *Id.* ¶ 34.

On January 28, 2003, an email was sent from Ugo Tanfani, the Product Manager of the Unipac Division of Romaco S.p.A., to Jeffrey O'Neill, the Division Manager of Technical

6

Services at Romaco, Inc. indicating that upon examining a filled tube sample from Guy

Chemical, he determined that:

> 1. Standard machine is not able to fill products silicone based.
> 2. For these applications dosing and injector cams must be suitably designed, considering product viscosity, quantity and tube dimensions.
> 3. Direct feeding by a diaphragm pump cause, besides just very heavy load originated by product, and additional considerable mechanical stress.
> 4. Also quantity of feeding isn't defective free because (probably caused by nozzle lift speeds) there is air presence into the filled tube which, considering product type, will cause its rapid deterioration.

Appendix to Brief in Opposition to Motion, Doc. No. 118, Ex. D. Mr. O'Neill replied: "During

the trials of this product Chuck and I had major concerns of the standard machine being able to

handle it. Of course we needed the sale and were overruled and forced to accept the application

by our old upper management." *Id.* On the same date, Mr. Tanfani replied, "I understand

perfectly the situation, but we haven't (for choice) a machine suitable to fill silicone. You have

just explored all possible and immediate solutions. In this situation, I can only propose a study

'at operating cost'. . . Believe me Jeff, I've just experimented these "upper" instructions, but

understimate [*sic*] possible consequences could be very expensive in terms of corporate image

and costs. This is more real, considering their interest to another machine (in this case costs

could be better dilute)." *Id.* Charles Petralia, Charles Rowe, and Alessandro Zannini were all

copied on these emails. *Id.*

On April 27, 2006, Plaintiff filed a complaint for breach of contract and express and

implied warranties against "Romaco N.V.", "Romaco USA" and "Unipac" as defendants.

7

Defendant's Findings, ¶ 1. On August 8, and September 29, 2006, Defendants filed motions to drop or dismiss all defendants but Romaco, Inc. The Court denied both motions without prejudice to raise the issues after discovery had closed. *Id.* ¶ 2. Discovery commenced on September 12, 2006. At a deposition in New Jersey on September 20, 2006, Defendants produced copies of internal e-mails dated January 2003 through October 2005 between Romaco, Inc. and Romaco S.r.l. *Id.* ¶ 3. The Court permitted Guy Chemical to amend its complaint to include counts for fraud. Romaco S.r.l., "Romaco S.p.A." ("S.p.A."), "Romaco AG" and Romaco, Inc. were added as defendants, and "Romaco USA" was dropped. *Id.* ¶ 4. In its amended complaint, Guy Chemical asserts claims for fraud (Count I), conspiracy (Count II), concerted tortious conduct (Count III), violation of express and implied warranties (Counts IV through VI), and breach of contract (Count VII). Plaintiff's Findings, ¶ 5. Discovery was extended to April 3, 2007. Defendant's Findings, ¶ 4.

When discovery closed on April 3, 2007, Defendants filed a second Rule 12 (b)(2) motion, this time requesting that Romaco S.r.l., "S.p.A.", "Romaco AG", "Unipac" and "Romaco N.V." be dismissed from the case with prejudice. Defendant's Findings, ¶ 5. Plaintiff filed its Response and Sur-Reply on April 23 and May 4, 2007, respectively. *Id.* On April 13, 2007, Romaco A.G., Romaco S.p.A., Romaco S.r.l., Romaco, Inc., Romaco N.V., and Unipac filed a Partial Motion for Summary Judgment claiming that the gist of the action doctrine and the economic loss doctrine preclude Guy Chemical from maintaining tort claims against any of the named defendants. Doc. No. 96. Plaintiff filed its response on May 14, 2007. Doc. No. 117. On April 3, 2008, the Court dismissed Romaco N.V. and Romaco A.G. but denied the 12 (b)(2)

8

motion as to Romaco S.r.l. Defendant's Findings, ¶ 5. The Court held a preliminary hearing on May 15 on the issue of personal jurisdiction with regard to Romaco S.r.l. (Unipac and Romaco S.p.A.), and directed the parties to file Findings of Facts and Conclusions of Law. *Id.*

On June 19, 2008, the remaining defendants filed a Motion to Dismiss Unipac and Romaco S.p.A. Doc. No. 141. Plaintiff filed its response on June 27, 2008. Doc. No. 143.

## II. STANDARDS OF REVIEW

"[I]n reviewing a motion to dismiss under Rule 12(b)(2), we 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'" *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361 (3d Cir.2002) (quoting *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n. 1 (3d Cir. 1992)). Nonetheless, a motion made pursuant to Rule 12(b)(2) "is inherently a matter which requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n. 9 (3d Cir.1984). Therefore, once a defendant has properly raised a jurisdictional defense, the plaintiff bears the burden of proving, either by sworn affidavits or other competent evidence, sufficient contacts with the forum state to establish personal jurisdiction. *N. Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d Cir.1990). "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Time Share Vacation Club*, 735 F.2d at 66 n. 9. Any disputes created by the affidavits, documents, or other records submitted for the court's consideration are resolved in favor of the non-moving party. *Irons v. Transcor Am.*, Civ. A. No. 01-4328, 2002 U.S. Dist. LEXIS 14149, at *3 n. 1, 2002 WL 32348317 (E.D. Pa. July 8, 2002) (citation omitted).

9

In addition, the following standards are applied in ruling upon a motion for summary

judgment:

> Summary judgment is appropriate only when it is demonstrated
> that there is no genuine issue as to any material fact and the
> moving party is entitled to judgment as a matter of law. *Celotex
> Corp. v. Catrett*, 477 U.S. 317, 322-32, 106 S.Ct. 2548, 2552- 57,
> 91 L.Ed.2d 265 (1986); Fed. R. Civ. P. 56(c). An issue of material
> fact is genuine "if the evidence is such that a reasonable jury could
> return a verdict for the nonmoving party." *Anderson v. Liberty
> Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.
> 2d 202 (1986). In deciding a motion for summary judgment, all
> reasonable inferences must be drawn in favor of the non-movant.
> *Oritani [Sav. And Loan Ass'n v. Fidelity and Deposit Co.*, 989
> F.2d 635, 638].

*Troy Chem. Corp., v. Teamsters Union Local No. 408*, 37 F.3d 123, 125-26 (3d Cir. 1994).

Federal Rule of Civil Procedure 56(c) states in pertinent part that judgment should be

granted "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law."

The Supreme Court explained this standard as follows:

> As to materiality, the substantive law will identify which facts are
> material. Only disputes over facts that might affect the outcome of
> the suit under the governing law will properly preclude the entry of
> summary judgment. Factual disputes that are irrelevant or
> unnecessary will not be counted. See generally 10A C. Wright, A.
> Miller, & M. Kane, Federal Practice and Procedure § 2725, pp.
> 93-95 (1983). This materiality inquiry is independent of and
> separate from the question of the incorporation of the evidentiary
> standard into the summary judgment determination. That is, while
> the materiality determination rests on the substantive law, it is the
> substantive law's identification of which facts are critical and
> which facts are irrelevant that governs. Any proof or evidentiary
> requirements imposed by the substantive law are not germane to

10

> this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinnings of those disputes.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L. Ed. 2d 202, 211

(1986).

The Supreme Court also clarified the judge's role in making factual determinations at the

summary judgment stage:

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Adickes*, 398 U.S. at 158-159, 90 S. Ct. at 1608-1609. Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial. *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347 (1948).

*Id.* at 255, 106 S. Ct. at 2513-14, 91 L. Ed. 2d at 216.

The Supreme Court also explained an opponent's burden under Rule 56(c):

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348,

1356, 89 L. Ed. 2d 538, 552 (1986)(internal citations omitted)(footnote omitted).

11

## III. DISCUSSION

### A. Romaco S.p.A. and Unipac as Parties

At the conclusion of the May 15, 2008 hearing on the issue of the Court's jurisdiction over Romaco S.r.l, the Court requested that the parties discuss an agreement or stipulation regarding Romaco S.r.l.'s succession to the rights and liabilities of "Unipac" and "S.p.A.", with a view toward dropping or dismissing the entities from the case. Based on the representations of the parties in their briefs on this matter, they agree that both parties should be dismissed from this matter, but disagree on the means by which this should occur. In later briefs on a separate issue, both Plaintiff and Defendants treat these entities as if they no longer exist and assert that Romaco S.r.l. has succeeded to S.p.A. and Unipac's rights and liabilities. *See* Doc. No. 144, p. 2, n.1; Doc. No. 145, p. 4, n.5.

Defendant argues that S.p.A. and Unipac should be dismissed from the action pursuant to the representations of defense counsel at the May 15, 2008 hearing and the corporate documents that Defendant Romaco S.r.l. attached to its brief. Plaintiff requests that the parties be dismissed strictly on the representations of counsel at the hearing. Defendant Romaco S.r.l. claims that it filed this issue as a motion to dismiss because it wanted to separate this issue from its 12 (b)(2) filings that were due on June 27, 2008. Plaintiff is not opposed to dismissing Unipac and Romaco S.p.A, but does not want the stipulated dismissal to be based on a finding or an inference that these defendants were misjoined or that the Court does not have personal jurisdiction over these defendants.

12

Since the parties agree on the issue that the Court discussed with them, namely that Romaco S.r.l has succeeded to and assumed all rights and liabilities of both Romaco S.p.A. and Unipac, the Court decides that the Romaco S.p.A. and Unipac will be dismissed with prejudice. The Court further makes a finding that Romaco S.r.l. has succeeded to and assumed all rights and liabilities of both Romaco S.p.A. and Unipac pursuant to the agreement of the parties. Since it is proper that the dismissal of all claims against a single defendant, or in this case fewer than all of the Defendants, be pursuant to Federal Rule of Civil Procedure 21, the Court grants the Defendant's motion with regard to Romaco S.p.A. and Unipac on those grounds.

### B. Contract and Breach of Warranty Claims Against Romaco S.r.l.

In their Motion for Partial Summary Judgment, Defendants argue that Guy Chemical's contract claims against all Defendants other than Romaco, Inc. must be dismissed because the only contract in this case is between Guy Chemical and Romaco, Inc. Plaintiff does not contest the dismissal of the breach of contract (Count VII) and violation of express warranty (Count IV) claims against Romaco S.r.l. However, Plaintiff argues that its claims for breach of implied warranty of merchantability and warranty of fitness for a particular purpose must remain because privity of contract is not required for implied warranty claims.

Under Pennsylvania law, the Pennsylvania Superior Court has held that privity of contract is not necessary for implied warranty of merchantability and warranty of fitness for a specific purpose claims against a manufacturer. *Spagnol Enters. Inc. v. Digital Equip. Corp.*, 568 A.2d 948 (Pa. Super. Ct. 1989); *Israel Phoenix Assurance Co.* v. *SMS Sutton Inc.*, 787 F. Supp. 102, 103 (W.D. Pa. 1992). In *Spagnol*, no direct contract existed between the manufacturer and

13

purchaser, as an intermediary had been used. *Spagnol*, 568 A.2d at 949, 952 Relying on a

Pennsylvania Supreme Court case, *Kassab v. Central Soya*,[2] the *Spagnol* court held that privity

of contract was not required in breach of implied warranty cases. *Spagnol* explained:

> As in *Kassab* where the plaintiffs' business (of breeding and
> raising dairy animals) was injured by the manufacturer's product
> (synthetic hormone contaminated feed), the plaintiffs instantly had
> its business (through the inability to computerize various aspects
> of the Spagnol Enterprises, Inc. and the needless expenditure of
> money associated with the programming) injured by Digital's
> defectively manufactured product (computer). And, in the absence
> of any privity of contract between the plaintiffs and Digital does
> not undermine a holding, as stated by the trial court, "in favor of
> the Plaintiffs under the assumpsit count and [under Section 2-314
> of] the Uniform Commercial Code appearing in their complaint."

Spagnol. 568 A.2d at 952. *Spagnol* further noted:

> [W]e interpret *Kassab* to allow the award of damages to a plaintiff
> where injury has been incurred as the result of a defectively
> manufactured product which in turn results in a needless
> expenditure of monies in attempting to make the product
> operational and functional so as to be productive in a 'business-
> sense.' To hold otherwise, would be to permit a manufacturer to
> place a product in the stream of the market and plead no liability
> when the instrument does not conform to the buyer's needs which
> were known by the manufacturer at the time the item was sold.

*Id.* Therefore, in the instant case, the Court does not find that a lack of privity should lead to the

dismissal of Plaintiff's breach of implied warranty claims against Romaco S.r.l.

## C. Personal Jurisdiction

In its answer and motion, Defendant Romaco S.r.l. raised the issue of personal

jurisdiction, claiming that personal jurisdiction was lacking over Romaco S.r.l. in the instant

---

[2] 246 A.2d 848 (Pa. 1968), overruled on other grounds, *AM/PM Franchise Assoc. v. Atlantic Richfield Co.*, 584 A.2d 915 (Pa. 1990)

14

case. The Court held a hearing on the matter and instructed that the parties file amended findings of fact and conclusions of law, which they did on June 27, 2008. Plaintiff claims that this Court has specific personal jurisdiction over Defendant Romaco S.r.l. under two separate theories: stream of commerce and the Calder "effects test." In applying the stream of commerce theory, this Court finds that personal jurisdiction exists; therefore, the Court need not address the Calder "effects test" arguments.

A federal court may exercise personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state in which it sits. Fed. R. Civ. P. 4(e). A two-step inquiry is involved in this determination. First, the court applies the relevant state statute. Pennsylvania's long-arm statute, 42 Pa. Cons. Stat. Ann. § 5322, states that "the jurisdiction of the Commonwealth shall extend to all persons . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." Under the second part of the test, the Pennsylvania long-arm statute is limited by the due process clause of the Fourteenth Amendment so that a Court may not assert personal jurisdiction over a nonresident defendant who does not have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95, 102 (1945)(quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940).

Where a defendant has raised a jurisdictional defense, such as in this case, the plaintiff bears the burden of establishing either that the defendant has "continuous or systematic" contacts

15

with the forum state (general jurisdiction) or that the cause of action arose from the defendant's forum-related activities (specific jurisdiction). *Mellon Bank v. DiVeronica Bros, Inc.*, 983 F.2d 551, 554 (3d Cir. 1993) (citing *Bane v. Netlink Inc.*, 925 F.2d 637, 639 (3d Cir. 1991). In the instant case, the Court will only address specific jurisdiction, because the Plaintiff does not allege that this Court has general jurisdiction over Romaco S.r.l. For specific jurisdiction to exist, a defendant must have sufficient minimum contact with the forum state that it "should reasonably be anticipated being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490, 501 (1980). "The constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528, 542 (1985) (quoting *International Shoe Co.*, 326 U.S. at 316). A defendant must "purposefully avail" itself of the privilege of conducting activities within the forum for sufficient contacts to exist. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283, 1298 (1958). If a plaintiff demonstrates a *prima facie* case of specific jurisdiction under the first step, a defendant may still prevail on its motion by "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S. Ct. at 2185, 85 L. Ed. 2d at 544.

Courts analyze questions of personal jurisdiction on a "defendant-specific and claim-specific basis." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 95 n.1 (3d Cir. 2004). Specific jurisdiction exists when "the particular cause of action sued upon arose from the defendant's activities within the forum state." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assn.*, 819 F.2d

16

434, 477 (3d Cir. 1987). Therefore, Guy Chemical must show jurisdiction over Romaco S.r.l. with respect to each of Guy Chemical's alleged causes of action: (1) fraud; (2) conspiracy; (3) concerted tortious conduct; and (4) violation of implied warranties (consisting of two claims).

## D. Stream of Commerce Theory

Plaintiff asserts that personal jurisdiction would exist under the stream of commerce theory. The stream of commerce theory allows courts to assert jurisdiction over a nonresident defendant "which injected its goods, albeit indirectly, into the forum state and either derived a benefit from the forum state or had a reasonable expectation of deriving a benefit from it." *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 203 (3d Cir. 1998)(internal citations omitted). There is no single established test to determine personal jurisdiction over a nonresident manufacturer under the stream of commerce theory. In *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987), the Justices of the United States Supreme Court offered three views on when jurisdiction may be asserted over a nonresident manufacturer who places its product into the stream of commerce. In a portion of the opinion joined by Justices Rehnquist, Powell, and Scalia, Justice O'Connor stated that for a court to find personal jurisdiction under this theory, simply placing the product into the stream of commerce was not sufficient; additionally, the manufacturer must have exhibited other conduct demonstrating an intent to introduce a product into the market of the forum state. *Asahi*, 480 U.S. at 112, 107 S. Ct. at 1032, 94 L. Ed. 2d at 104. Justice O'Connor gave several examples of such additional conduct: "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum

State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state." *Id.* In a separate concurrence, with three other Justices joining, Justice Brennan found a manufacturer's simple awareness that a product is being marketed in the forum State would be sufficient to establish minimum contacts. *Id.* at 117, 107 S. Ct. at 1034, 94 L. Ed. 2d at 107. In a separate concurrence, Justice Stevens argued that the Court's determination regarding whether there was "purposeful availment" should have been influenced by the volume, value, and hazardous character of the components at issue. *Id.* at 122, 107 S. Ct. at 1037, 94 L. Ed. 2d at 111.

The Third Circuit has not identified any one test to use when determining whether personal jurisdiction may be asserted under the stream of commerce theory, and advocates deciding each case on the basis of the record facts. *Pennzoil Prods. Co.*, 149 F.3d at 206-07 (applying both Justice O'Connor and Justice Brennan's standards in holding that jurisdiction existed under the stream of commerce theory.). Since the Third Circuit proposes deciding each case on the basis of the record facts, this Court finds it unnecessary to examine each and every case cited by the parties.[3]

Guy Chemical sets forth several factual averments in support of its argument that S.r.l would meet either of the purposeful availment tests set forth by the Supreme Court and utilized

---

[3]Both Plaintiff and Defendants cite to cases in support of their arguments in this case. Defendants rely on a case from this district: *Zombeck v. Amada Co. Ltd.*, 2007 WL 4105231 (W.D. Pa. 2007). Plaintiff cites the following several cases: *Hershey Pasta Group v. Vitelli-Eleva Co., Inc.*, 921 F. Supp. 1344, 1348-49 (M.D.Pa. 1996); *Felty v. Conaway Processing Equip. Co.*, 738 F. Supp. 917, 919-20 (E.D. Pa. 1990); *H.A.S. Prot., Inc. v. Senju Metal Indus. Co.*, 2003 WL 23419852 (E.D.Pa. 2003); *A.V. Imports, Inc. V. Co De Fratta, S.p.A.*, 171 F. Supp. 2d 369, 373-374 (D.N.J. 2002); *LG. Philips LCD Co., v. Chi Mei Optoelectronics Corp.*, 551 F. Supp. 2d 333 (D. Del. 2008); *Trueposition, Inc. V. Sunon, Inc.*, 2006 WL 1686635 (E.D.Pa. 2006); *Stokes v. Indus. Shredding Sys., Inc.*, 2005 WL 35882 (E.D.Pa. 2005); and *Rockwell Int'l Corp. v. Costruzioni Aeronautiche Giovannii Augusta, S.p.A. and S.N.F.A.*, 553 F. Supp. 328, 331 (E.D. Pa. 1982).

by the Third Circuit in *Pennzoil*. Plaintiff argues that Mr. Zannini's visit to Somerset and his interactions with Mr. Berkebile indicated an intention to serve the Pennsylvania market. Plaintiff further argues that the testimony of Mr. Rowe, the service technician, indicates that he worked for Romaco, Inc. but was overseen by Mr. Zannini, who worked for Romaco S.r.l. and that Mr. Rowe was confused about the corporate structure of the Robbins & Meyers family of companies. Furthermore, a brochure, attached to the Unipac 120, indicated that Unipac was a division of Romaco S.p.A. (now S.r.l.). Guy Chemical claims that advertising materials for the machines, such as the brochure, were generated by both the manufacturing entities and Romaco, Inc. Addition ally, Romaco S.r.l. and Romaco, Inc., subsequent to the sale and installation, exchanged emails regarding the problems with the machine at Guy Chemical. Generally, Plaintiff argues that these events demonstrate a coordination of efforts by Romaco S.r.l. and Romaco, Inc.

First, the Court notes that Mr. Rowe never stated that he reported to Mr. Zannini at any time during the sale, installation, or later attempts to fix the Unipac 120 located at Guy Chemical. Instead, Mr. Rowe testified that after a corporate restructuring on September 1, 2006, when he became an after-market manager, he then began reporting to Mr. Zannini. Doc. No. 145, Ex. 18, ¶ 16; Doc. No. 144, Ex. C, pp. 9-10. Therefore, this alleged statement has no strong bearing on Plaintiff's argument. Instead, Plaintiff's argument hinges on four events: 1) Alessandro Zannini's visit to the Guy Chemical facility and subsequent dinner; 2) the Unipac 120 brochure obtained at the Pack Expo by Mr. Berkebile, which bore the Romaco S.p.A. (now S.r.l.) moniker, and information and specifications obtained from S.p.A.; 3) Romaco, Inc.'s role

19

as a United States distributor for Romaco S.r.l.'s products; and 4) the emails and parts exchanged between personnel at Romaco S.r.l. and Romaco, Inc. regarding remedies for issues occurring with Guy Chemical's Unipac 120.

Romaco S.r.l. emphasizes its lack of physical connections to the United States. For instance, S.r.l has never possessed offices, real property or personal property in the U.S. Romaco S.r.l. does not have a domestic telephone number or mailing address. S.r.l has no employees in the United States and is not registered to do business anywhere in the United States. Despite these arguments, neither of the purposeful availment tests rely on Romaco S.r.l.'s physical presence in the United States. In fact, the evidence provided by Guy Chemical tends to show that Romaco S.r.l. provided technical specifications and information regarding the Unipac 120 for advertisements utilized by Romaco, Inc. at the Pack Expo. Importantly, these advertisements bore the name of Romaco S.p.A. (now S.r.l.), rather than the name Romaco, Inc. Although these advertisements were distributed at the Pack Expo in Chicago, Defendants' representatives were aware that Guy Chemical was a Pennsylvania company. Therefore, brochures bearing the Romaco S.r.l. name with product specifications and descriptions were used at a nationwide industry meeting, as a direct advertisement to a Pennsylvania consumer.

The representatives at the expo indicated to Mr. Berkebile that they would have no issue servicing a Pennsylvania company and that Pennsylvania was "within [their] service area." Therefore, Romaco S.r.l., which admits to using Romaco, Inc. as its distributor, had products entering the Pennsylvania market through a distributor that represented itself as including Pennsylvania as part of its service area. This, along with Alessandro Zannini's visit to Guy

20

Chemical's location and other customer locations in Pennsylvania, shows that Romaco S.r.l. was aware that their product was being sold on the Pennsylvania market. Romaco S.r.l.'s filtering their machines through Romaco, Inc. does not preclude a finding of personal jurisdiction on these facts, given Romaco S.r.l.'s marketing to a Pennsylvania company, and awareness that its products were being sold and serviced there.

Finally, Guy Chemical produced evidence that Romaco S.r.l. established channels to service it as a Pennsylvania customer and attempted to provide solutions to the problems with the Unipac 120. Although Romaco S.r.l.'s Ugo Tanfani never directly communicated with Guy Chemical over any of the machine issues, Mr. Rowe, a Romaco, Inc. employee regularly consulted Mr. Tanfani with regard to Guy Chemical's specific issues with the Unipac 120. No less than fifteen emails were exchanged on specific issues with Guy Chemical's machine. These emails further indicate that actual parts from the Guy Chemical machine were shipped by Romaco, Inc. to Romaco S.r.l. in Italy for testing. The record reflects that Mr. Rowe commonly contacted Romaco S.r.l. employees with technical issues with U.S. based machines. Mr. Rowe also indicated that it was commonplace for Romaco S.r.l. technicians to assist or even visit customers of the Unipac line. Mr. Zannini further indicated a willingness to deal directly with Mr. Berkebile on issues of service if Guy Chemical was not receiving what they needed from Romaco, Inc. Therefore, under either Justice O'Connor or Justice Brennan's tests, Romaco S.r.l. would have sufficient minimum contacts for personal jurisdiction. Drawing all reasonable conclusions in Plaintiff's favor, the Court finds that Plaintiff has made out a prima facie case for the exercise of personal jurisdiction over Romaco S.r.l.

As the Plaintiff has established a prima facie case, the Court must now address whether "the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S. Ct. at 2185, 85 L. Ed. 2d at 544.. "[T]he determination of the reasonableness of the exercise of jurisdiction in each case will depend on an evaluation of several factors. A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi*, 480 U.S. at 113, 107 S. Ct. at 1033, 94 L. Ed. 2d at 105. A court must also evaluate " 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). Where the parties originate in different nations, the Supreme Court noted that the relevant inquiry involves consideration of "the procedural and substantive policies of other *nations* whose interests are affected by the assertion of jurisdiction by the . . . [American] court." *Asahi*, 480 U.S. at 115, 107 S. Ct. at 1034, 94 L. Ed. 2d at 106. Defendants contend that the burden they face in being haled into court in a foreign land is prohibitive.

Although Defendant Romaco S.r.l. claims that finding personal jurisdiction in this instance would allow "any American plaintiff [to] secure jurisdiction over any foreign manufacturer selling to an American distributor structured to do business globally and hale it into U.S. court", the Court once again notes that the Third Circuit instructs district courts to take a fact-specific approach to the issue of personal jurisdiction; therefore, a finding that personal jurisdiction exists in this case would obviously not necessarily signal the propriety of personal

22

jurisdiction in any other case. Therefore, the Court does not find this argument persuasive. Romaco S.r.l. makes no further argument regarding how the exercise of personal jurisdiction in this case would affect the substantive and procedural policies of Italy or any other foreign country.

With regard to the issue of fairness, the Court notes that this is not an instance where a defendant manufactured a mere component part to a machine. Instead, Romaco S.r.l. manufactured and designed the entire stock machine. Romaco, Inc., the U.S. distributor and marketer, has submitted to the jurisdiction of this Court. Alessandro Zannini of Romaco S.r.l. already provided a declaration in this case; furthermore, discovery from Romaco S.r.l. has also already been provided. The Court further notes that Romaco S.r.l. is a subsidiary of an American corporation located in Dayton, Ohio, and that both Romaco, Inc. and Romaco S.r.l. are represented by able local counsel who are capable of fully represe nting their interests and minimizing inconvenience. As a result, in the interest of fairness and a speedy resolution in the instant case, the law dictates that Romaco S.r.l. remain a defendant in the instant action.

### E. Gist of the Action Doctrine and Economic Loss Doctrine

Defendants Romaco, Inc. and Romaco S.r.l. argue that Guy Chemical's fraud claims, for both fraud in the inducement and fraud in the performance claims against Romaco, Inc., are barred by the gist of the action doctrine found in Pennsylvania law. They further argue that the gist of the action doctrine also precludes Guy Chemical's fraud claims against Romaco S.r.l., even though Romaco S.r.l. was not a party to the contract between Romaco, Inc. and Guy Chemical. In the alternative, the remaining Defendants argue that Pennsylvania's economic loss

23

doctrine precludes Guy Chemical's fraud claims against all defendants. In the event that the fraud claims would be precluded by the gist of the action and economic loss doctrines, Defendants argue that Guy Chemical's conspiracy and concerted tortious action claims would also be barred. Finally, Defendants argue that all contract and warranty claims against all defendants other than Romaco, Inc. must be dismissed, which the Court dealt with above.

The "gist of the action" doctrine has not been formally adopted by the Supreme Court of Pennsylvania. However, the Court predicts, as this Court has done in the past, that the Pennsylvania Supreme Court would adopt the doctrine as set forth in cases decided by the Pennsylvania Superior Court.[4] In *eToll Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10 (Pa. Super. Ct. 2002), the Pennsylvania Superior Court described the "gist of the action" doctrine as being "designed to maintain the conceptual distinction between breach of contract claims and tort claims [by] preclud[ing] plaintiffs from recasting ordinary breach of contract claims into tort claims." *Id.* at 14. The court described the differences between tort and contract actions as follows:

> Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals . . . To permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled form of actions.

___

[4]While not a precedential opinion, the Third Circuit has found in the past that the Pennsylvania Supreme Court would adopt the "gist of the action"doctrine in an unpublished opinion. *See Williams v. Hilton Group PLC*, 93 Fed. Appx. 384, 385 (3d Cir. 2004). In addition, the Pennsylvania Superior Court extensively discussed the federal case law leading to its conclusion that the Pennsylvania Supreme Court would adopt the "gist of the action" doctrine. *See eToll Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 16-20 (Pa. Super. Ct. 2002). Therefore, this Court believes the same finding is appropriate here.

24

*eToll*, 811 A.2d at 14 (citing *Bash v. Bell Tel. Co.*, 601 A.2d 825, 829 (Pa. Super. Ct. Ct. 1992)).

As a result, "a claim should be limited to a contract claim when 'the parties' obligations are

defined by the terms of the contracts, and not by the larger social policies embodied by the law

of torts." *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 104 (3d Cir. 2001)

(quoting *Bash*, 601 A.2d at 830). Therefore, the doctrine essentially bars:

> tort claims: (1) arising solely from a contract between the parties;
> (2) where the duties allegedly breached were created and grounded
> in the contract itself; (3) where the liability stems from a contract;
> or (4) where the tort claim essentially duplicates a breach of
> contract claim or the success of which is wholly dependent on the
> terms of the contract.

*eToll*, 811 A.2d at 19 (internal quotations and citations omitted).

The Appellants in *eToll* argued that claims for fraud should not fall under the doctrine.

*Id.* at 15. The court suggested that "whether the fraud claim was actually barred by the doctrine

appears to vary based on the individual circumstances and allegations of the plaintiff." *Id.* at 17.

In support of their suggestion, *eToll* analyzed several Third Circuit cases and concluded:[5]

> These courts have not carved out a categorical exception for fraud,
> and have not held that the duty to avoid fraud is always a
> qualitatively different duty imposed by society rather than by the
> contract itself. Rather, the cases seem to turn on the question of
> whether the fraud concerned the performance of contractual duties.
> If so, then the alleged fraud is generally held to be merely
> collateral to a contract claim for breach of those duties. If not,
> then the gist of the action would be the fraud, rather than any
> contractual relationship between the parties.

---

[5]*See Foster v. N.W. Mut. Life*, 2002 WL 31991114 (E.D.Pa. July 25, 2002); *Galdieri v. Monsato Co.*, 245 F. Supp. 2d
636 (E.D. Pa. 2002); *Werner Kammann Maschinenfabrik, GmbH, v. Max Levy Authograph, Inc.*, 2002 WL 126634
(E.D.Pa. 2002); *Polymer Dynamics, Inc v. Bayer Corp*, 2000 WL 1146622 (E.D. Pa. Aug. 14, 2000); *Caudill Seed &
Warehouse Co. v. Prophet*, 123 F. Supp. 2d 826 (E.D. Pa. 2000); *Am. Guarantee and Liab. Ins. Co. v. Fojanini*, 90 F.
Supp. 2d 615 (E.D. Pa. 2000); and *Factory Mkt. v. Schuller Int'l.*, 987 F. Supp. 387 (E.D. Pa. 1997).

*Id.* at 19. In the instant case, the parties argue over whether the Plaintiff's tort claims are barred by the "gist of the action" doctrine. As we discussed in our Order of January 22, 2007, some cases have concluded that claims for fraudulent inducement are necessarily collateral to contractual duties, but still others have refused to apply the doctrine in cases of true fraud in the inducement. *Compare Sch. Lane House Phila., LLC v. Rait P'ship, L.P.,* 2005 WL 2397146, at *4 (E.D. Pa. Sept. 27, 2005) ("In Pennsylvania, fraud in the inducement of a contract is not covered by the doctrine because fraud to induce a person to enter into a contract is generally collateral to the terms of the actual terms of the contract.") *with Sunquest Info. Sys. v. Dean Witter Reynolds, Inc.,* 40 F. Supp. 2d 644, 656 (W.D. Pa. 1999). Therefore, the gist of the action doctrine does not always bar fraudulent-inducement claims.

Similarly, the economic loss doctrine bars an action in tort or strict liability where the only injury is "economic loss" absent any physical injury or damage to property separate from the property at issue. *2-J Corporation v. Tice,* 126 F.3d 539, 541 (3d. Cir. 1997). The doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 618 (3d Cir. 1995). The reasoning behind this doctrine is essentially that contract law permits the parties to negotiate the terms of a manufacturer's liability and in exchange for this liability restriction, plaintiffs can negotiate pricing. *See East River S.S. Corp. v. Transamerica Deleval, Inc.,* 476 U.S. 858 (1986). As set forth in *East River,* this doctrine serves to maintain distinctions between tort and contract law.

26

In *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002), the Third Circuit applied the economic loss doctrine to fraud claims. The plaintiffs in *Werwinski* brought claims for defects in vehicles manufactured by defendants. The plaintiffs claimed that the defendants were aware of the defects in the vehicles and were aware of the operating difficulties caused by the defects. Plaintiffs made allegations that Ford not only knew about the defects in the vehicles, but also actively concealed the defects from consumers. Because the only damage suffered was to the products themselves, the Third Circuit court reasoned that plaintiffs' fraud claims were barred by the economic loss doctrine. The court acknowledged that other courts have excepted "fraud in the inducement" claims from the economic loss doctrine. *Id.* at 677-78. However, the court noted that this only occurred when the fraud was not inextricably intertwined with the contract claims. *Id.* The Third Circuit noted that "because appellants' fraudulent concealment claims relate to the 'quality or character of the goods sold,' the claims clearly are 'intertwined' with, and not 'extraneous' to, their breach of warranty claims." *Id.* at 678. The court also explained that the claims were "undergirded by factual allegations identical to those supporting their breach of contract counts." *Id.* (citations omitted).

## F. Plaintiff's Fraud Claims

Analyzing this case under the gist of the action doctrine requires a determination of whether Guy Chemical's claims for fraud arise out of its contract with Romaco, Inc.[6] This

<hr />

[6]Defendants rely on the non-precedential case *Williams v. Hilton Group PLC*, 93 Fed. Appx. 384, 385 (3d Cir. 2004) to support their argument that all of Plaintiff's fraud claims are collateral to the contract and are therefore barred by the doctrine. In *Williams*, the Court of Appeals relied on a recent case from the Eastern District of Pennsylvania, *Penn City Investments Inc v. Soltech, Inc.*, 2003 WL 22844210 (E.D.Pa. Nov. 25, 2003), which held that a "fraudulent inducement claim was barred because the pre-contractual statements concerned specific duties that the parties later outlined in the contract." *Williams*, 93 Fed. Appx. at 386 (internal citations omitted). The Court of Appeals similarly found that Williams' tort claims were barred because they were all founded on a defendant's agreement to grant Williams the

Court's order of January 22, 2007 stated that, "dispositive in the case *sub judice* is that the performance specifications that Romaco guaranteed during precontractual negotiations were later included in the price quotation and purchase order that comprised the Parties' contract." Plaintiff has not introduced any new evidence that would negate this statement. In its Amended Complaint, Plaintiff stated:

> 161. But for the false, fraudulent and misleading test results, representations, statements, guarantees and warranties made by Defendants with respect to the Unipac 120, Guy Chemical would not have purchased the Unipac 120.
> 162. Despite knowledge to the contrary, Defendants represented to Guy Chemical that the Unipac 120 would fulfill the needs of Guy Chemical.
> 163. The misrepresentations and fraudulent statements made by Defendants took such forms as false test results and false advertisements.
> 164. Guy Chemical reasonably believed and relied upon the false and fraudulent misrepresentations made by Defendants with respect to the Unipac 120.
> 165. After fraudulently inducing Guy Chemical into purchasing the Unipac 120, Defendants persisted in their fraudulent behavior with respect to Guy Chemical and the Unipac 120.
> 166. Such incidents of fraud that were committed after the purchase of the Unipac 120 included: concealing the truth behind the inability of the Unipac 120 to function properly; lying to Guy

---

exclusive right to purchase assets during a due diligence period. *Id.* at 387. The Defendants similarly rely on a Pennsylvania Superior Court case, *Hart v. Arnold*, 884 A.2d 316, in which the court found that in the case of a fully integrated contract, the plaintiff's fraud in the inducement claim would be barred by the doctrine. In a supplement, Defendants further cited to *Grimm v. Washington Mut. Bank*, 2008 WL 2858377 (W.D. Pa. July 22, 2008) and *Bryan's Quality Plus v. Shaffer Builders, Inc.*, 2008 WL 3523935 (E.D. Pa. Aug. 12, 2008) that made determinations along similar lines.

Plaintiff relies on cases where fraud in the inducement claims were not barred where they were collateral to the contract. *See Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co.*, 256 F. Supp. 2d 329, 341 (E.D. Pa. 2003) ("Fraud in the inducement of a contract would *not necessarily* be covered by the gist of the action doctrine.") (internal quotation and citation removed) (emphasis added); *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 719 (Pa. Super. Ct. 2005) (noting that the "gist-of-the-action doctrine would *not necessarily* be covered by the 'gist of the action doctrine.'" (emphasis added)).

> Chemical about what was needed to make the Unipac 120 function
> properly...

Doc. No. 75, ¶¶ 161-166. While Plaintiff purports that these issues stand separate and apart from

the contract, they actually deal with the representations of performance specifications that were

later incorporated into the contract between the Romaco, Inc. and Guy Chemical.[7] Since the

Court has determined that these claims are barred by the gist of the action doctrine, it will not

address the economic loss doctrine for these claims.

Plaintiff makes additional claims of fraud that Defendants argue are fraud in the

performance claims necessarily barred by the gist of the action and economic loss doctrines. In

its Amended Complaint, Plaintiff claims:

> 169. Defendants maintained their fraudulent conduct in part to
> induce Guy Chemical to purchase additional products (including
> an additional tube filling machine) from Defendants.
> 170. While Defendants knew what modifications and
> improvements were required to render the Unipac 120 fully
> operational, Defendants refrained from engaging in such actions
> due to their belief that such actions were too expensive.
> 171. In an effort to mitigate any costs associated with rendering
> the Unipac 120 fully operations, Defendants attempted to sell Guy
> Chemical an additional tube filling machine.

---

[7]Plaintiff further argues that the contract between it and Romaco, Inc. was not fully integrated and did not contain an integration clause. Therefore, they postulate that its claims would not be barred by the gist of the action doctrine. It raises an argument similar to the one it raised in response to Defendants' First Motion for Summary Judgment. (Doc. No. 58). It argues that the contract strictly consisted of the Unipac 120 document and did not incorporate the Romaco Group Standard which contained an integration clause. Plaintiff argues that without the integration clause, the gist of the action doctrine would not apply and parol evidence could be considered by this Court. However, as the Court noted earlier, the representations made to Plaintiff surrounded the performance capacity of the Unipac 120 and those performance specifications were clearly represented in the Contract. Plaintiff does not allege the existence of further representations that were not later included in the contract. Therefore, the gist of the action doctrine can and does apply to Plaintiff's claims.

Doc. No. 75, ¶¶ 169-171. There is evidence from the emails between Jeff O'Neill and Ugo Tanfani, and Charles Rowe and Ugo Tanfani, that Romaco, Inc. and. S.r.l. were attempting to offset the costs of getting Guy Chemical's first Unipac 120 operational by inducing Guy Chemical to buy a second machine. *See also* Doc. No. 75, Ex. E. Romaco, Inc. also continued to sell replacement parts to Guy Chemical despite the sent emails stating that the Unipac 120 could not handle Guy Chemical's products. The original contract did not contemplate expenditures unrelated to normal wear and tear; furthermore, the original contract did not contemplate the potential purchase of a second machine. However, the economic losses for replacement parts are directly connected to the Unipac 120's inability to handle Guy Chemical's oxime silicone; the capacity of the machine to handle Guy Chemical's products is directly contemplated by Plaintiff's bre ach of contract claim. Additionally, Guy Chemical never purchased a second machine, limiting its ability to claim damages for misrepresentations separate from those for breach of contract. Therefore, to the extent Plaintiff's fraud claims deal with Romaco, Inc. and S.r.l. colluding to induce Guy Chemical to buy replacement parts and a new machine, these claims will be dismissed as against Romaco Inc under the economic loss doctrine. However, the damages stemming from these claims are still asserted as part of the breach of contract and warranty claims and remain as part of the suit.

Plaintiff further argues that even if some of its fraud claims against Romaco, Inc. are barred by the gist of the action or economic loss doctrines, such claims would not be barred against Romaco S.r.l. who was not a party to the contract. Defendants claim that the gist of the action doctrine would preclude fraud in the inducement and fraud in the performance claims

30

against Romaco S.r.l., even though Romaco S.r.l. was not a party to the contract. In support of this argument, Defendants rely on *Williams v. Hilton Group PLC*, 93 Fed. Appx. 384, 385 (3d Cir. 2004) and *East River Steamship Corp v. Transamerica Deleval Inc.*, 476 U.S. 858, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986). In *Williams*, Defendants argue that the Third Circuit determined that Alan Ross, the Managing Director and principal agent for Ladbrokes, while not a party to the contract between the plaintiff and Ladbrokes, was still covered by the gist of the action doctrine. The Third Circuit stated:

> [A]lthough Williams did not have a contractual relationship with Ross, Williams cannot detach Ross from his status as an agent for Ladbrokes. Ross served as the principal negotiator for Ladbrokes. As the Pennsylvania courts have spelled out, the gist of the action doctrine bars tort claims against an individual defendant where the contract between the plaintiff and the officer's company created the duties that the officer allegedly breached.

*Williams*, 93 Fed. Appx. at 387.

First, the Court notes that the *Williams* case was not deemed precedential by the Third Circuit; however, its reasoning can be considered persuasive. Second, the Court notes that the instant case does not involve an individual defendant that was merely an agent or employee of the contracting party. Romaco S.r.l., rather than being an agent or employee, was a separate entity that manufactured the product. This distinction undermines Defendant's arguments regarding the gist of the action doctrine.

Defendant further relies upon *East River* to argue that the economic loss doctrine would bar the claims against Romaco S.r.l.. In *East River*, the manufacturer of a turbine on a steamship contract transferred title to the completed ship to a trustee company which then chartered the

31

boat to the plaintiff. 476 U.S. 858, 859, 106 S. Ct. 2295, 2296, 90 L. Ed. 2d 865, 870 (1986). No direct contract existed between the manufacturer of the defective turbine and the plaintiff. *See id.* The Supreme Court applied the economic loss doctrine, stating that the plaintiff's best and only remedy was in breach of contract or warranty claims. *Id.* at 874, 106 S. Ct. at 2303, 90 L. Ed. 2d at 879. Much like the plaintiff in *East River*, the Plaintiff in the matter *sub judice* can and has stated implied warranty claims against manufacturer Romaco S.r.l. Since Plaintiff's fraud claims against Romaco S.r.l. are tied to the "quality of the goods sold," an issue directly addressed by the breach of warranty claims, the fraud claims will be dismissed since Plaintiff may continue to pursue the issue under its warranty claims.

### F. Plaintiff's Conspiracy and Concerted Tortious Action Claims

Plaintiff has two remaining tort-based claims: civil conspiracy and concerted tortious action. To state a claim for civil conspiracy under Pennsylvania common law, a plaintiff must allege the combination or agreement of two or more persons to commit an unlawful act or perform a lawful act by unlawful means. *See Thompson Coal Co. v Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979); *Burnside v. Abbott Labs.*, 505 A.2d 973, 980 (Pa. Super. Ct. 1985); *Slaybaugh v. Newman*, 479 A.2d 466, 472 (Pa. Super. Ct. 1979). In addition, a plaintiff must allege that the defendant had an unjustified intent to injure, or acted with malice. *See Thompson Coal*, 412 A.2d at 472; *Rutherford v. Presbyterian-Univ. Hosp.*, 612 A.2d 500, 508 (Pa. Super. Ct. 1992) (citing *Thompson Coal*). A claim for civil conspiracy can proceed only when there is a cause of action for an underlying act. *Nix v. Temple Univ.*, 596 A.2d 1132, 1137 (Pa. Super. Ct. 1991). "Since liability for civil conspiracy depends on performance of some underlying tortious act, the

32

conspiracy is not independently actionable; rather, it is a means of establishing vicarious liability for the underlying tort." *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000) citing *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983).

The Pennsylvania Supreme Court has further determined that a viable cause of action for concerted tortious conduct exists in Pennsylvania stemming from Section 876 of the Second Restatement of Torts. *Skipworth by Williams v. Lead Indus., Inc.*, 690 A.2d 169 (Pa. 1997). This theory provides that "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him." *Id.* at 174 (citing Restatement (Second) of Torts § 876). The court further determined that a claim of concerted action could not be established if "the plaintiff is unable to identify the wrongdoer or the person who acted in concert with the wrongdoer." *Id.* at 174. Since both of these causes of action brought by Plaintiff require an underlying tortious act to be a valid cause of action, and the Court has dismissed Plaintiff's fraud claims (the only separately actionable tort claims), these claims will also be dismissed.

An appropriate order follows.

33

**AND NOW**, this 26th day of March, 2009, in consideration of the Defendant Romaco S.r.l.'s Motion to Dismiss Defendants "Unipac" and Romaco S.p.A." (Doc. No. 141), Defendants' Motion for Partial Summary Judgment (Doc. No. 96), and Defendants' Motion for Lack of Jurisdiction Over the Person (Doc. No. 88) and in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT Defendant Romaco S.r.l.'s Motion to Dismiss Defendants "Unipac" and Romaco S.p.A." is GRANTED pursuant to Federal Rule of Civil Procedure 21; Defendants' Motion for Partial Summary Judgment is GRANTED as to Romaco, Inc. for Counts I, II, and III, GRANTED as to Romaco S.r.l. for Counts I, II, III, IV, and VII, and DENIED as to Romaco S.r.l. for Counts V and VI; and Defendants' Motion for Lack of Jurisdiction Over the Person is DENIED.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

34